UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TERRI BACKUS,

       Plaintiff,                      CIVIL ACTION NO. 06-10132

       v.                               DISTRICT JUDGE NANCY G. EDMUNDS

COMMISSIONER OF              MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.  Introduction**

      This is an action for judicial review of the defendant's decision denying plaintiff's application for Social Security disability benefits.  Plaintiff sought benefits during a closed period–between May 10, 2000[1] and August 7, 2002, when she returned to work.  Plaintiff alleges that she was disabled due to torn fibrous cartilage in her right (non-dominant) wrist; plaintiff is left-handed.  Following two hearings before an ALJ, plaintiff was denied benefits because despite her impairments, she could still perform a significant number of sedentary jobs.  Plaintiff contends that this finding is not supported by substantial evidence.  Defendant contends otherwise.  Specifically, plaintiff challenges the hypothetical questions and the responses relied

---

[1] There is some confusion regarding the onset date.  The ALJ's 2004 decision references a February 7, 2001 disability date.  (Tr. 20)

- 1 -

on by the ALJ. Her argument essentially turns on the ultimate finding by the ALJ as to her residual functional capacity (RFC) that she could stand for six hours of an eight hour day (permitting the performance of identified jobs) or could stand for no more than two hours of an eight hour day (precluding any work) as he found initially. For the reasons discussed in this Report, it is recommended that the decision denying benefits be affirmed.

At the time of the decision, plaintiff was 43 years old (DOB 1961). She completed high school and obtained certification as a nursing assistant (CNA). She worked mostly as a CNA, and stopped working in May 2000 because of pain in her right wrist which made it difficult to turn patients or push their wheelchairs. After surgery and a seven month re-training program, plaintiff returned to work as a medical assistant in August, 2002–a job which requires no lifting. (Tr. 240, 311) She submits that she is entitled to a closed period of disability.

## II.  Legal Standards

### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists

>in the national economy, regardless of whether such work exists in
>the immediate area in which he lives, or whether a specific job
>vacancy exists for him, or whether he would be hired if he applied
>for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears of the burden of proving that she is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate Social Security Disability claims. See 20 C.F.R. § 404.1520. As discussed in Foster, Id. at 354 (citations omitted), this process consists of the following:

>The claimant must first show that she is not engaged in substantial
>gainful activity. Next the claimant must demonstrate that she has a
>"severe impairment." A finding of "disabled" will be made at the
>third step if the claimant can then demonstrate that her impairment
>meets the durational requirement and "meets or equals a listed
>impairment. If the impairment does not meet or equal a listed
>impairment, the fourth step requires the claimant to prove that she
>is incapable of performing work that she has done in the past.
>Finally, if the claimant's impairment is so severe as to preclude the
>performance of past work, then other factors, including age,
>education, past work experience, and residual functional capacity
>must be considered to determine if other work can be performed.
>The burden shifts to the Commissioner at this fifth step to establish
>the claimant's ability to do other work.

### B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

>Any individual, after any final decision of the Commissioner of
>Social Security made after a hearing to which he was a party,
>irrespective of the amount in controversy, may obtain a review of
>such decision by a civil action commenced within sixty days after

>the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brainard, 889 F.3d at 681. Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

### III.  Analysis

Here, both ALJs made findings favorable to plaintiff at steps one and two, and plaintiff does not take issue with the findings regarding step three (failure to meet a listed impairment).

Neither does plaintiff quarrel with the analysis of the medical evidence. The medical evidence shows that treatment for wrist pain began in early 1998. Plaintiff reported injuring her wrist while turning a patient in the fall of 1997. An MRI in January, 1998 showed a tear of the triangular fibrocartilage complex (TFC). (Tr. 107)  Subsequently, plaintiff re-injured the wrist in the same way in March, 2000. She treated with her family physician, Dr. Greenfield, who noted that she displayed some weakness and reduced range of motion on examination. He returned plaintiff to work with the restriction of no lifting with the right hand. (Tr. 131)  She had no

atrophy and vascular function was intact. (Tr. 131) Her nerve conduction study was normal. (Tr. 133) Plaintiff followed a conservative course of treatment, but it was not successful. Arthroscopic surgery was performed in June 2000, after which she had physical therapy. In January 2001, plaintiff still had pain and reduced grip strength, but 90 percent of normal motion and no significant swelling. (Tr. 147) Her treating physician, Dr. Stewart, opined that she should remain off work for the eight to ten months following and should retrain for a different job. (Tr. 140-147, 152, 229)

The concern is essentially the differing findings of residual functional capacity. Plaintiff had two hearings before ALJs. The 2004 decision by ALJ Thomas McGovern found that plaintiff had severe impairments of the right wrist and some tendonitis in the right elbow. (Tr. 276) He found no evidence of any other impairments. (Tr. 277) Despite this, he determined that she could not sit more than six hours nor stand more than two hours during the work day.[2] (Tr. 277) Relying on a hypothetical question propounded to the vocational expert (VE) which described an individual who could lift 10 pounds, **stand six hours, and sit two hours**, but could

---

[2]It seems clear to the court that, in fact, the RFC by ALJ McGovern of no more than two hours standing is a typographical or clerical error. All evidence shows only right wrist pain. Her ability to walk and stand is unaffected by her impairment. Plaintiff has denied other medical problems to her doctors and is on no medication. (See Tr. 131, 170) With respect to her daily activities, she reports that she still likes to walk, and that this is her recreational activity. (Tr. 83) She also likes to visit friends, fish, clean house, and hunt. The restrictions on these activities are due only to her hand problems. (Tr. 83) She reports that she has no limitations sitting and can stand "as long as needed." (Tr. 82) She left blank the question "how long has hour condition affected your ability to walk?" (Tr. 82) In addition, she reported that in her former job, she walked six hours a day, stood for seven hours a day and sat for one hour a day. (Tr. 54) All of these are consistent with ALJ Harper's determination that she can sit for two hours and stand for six hours.

not crawl, climb, use vibrating tools, do repetitive liaising, or use the non-dominant (right) hand for fine or gross manipulation on more than a limited basis, ALJ McGovern found that plaintiff could do other jobs.  (Tr. 277, 325-326)  The VE responded to the hypothetical that such an individual could perform some 3,000 jobs as assembler, checker, inspector, receptionist, and surveillance system monitor.  (Tr. 327)

However, because the written opinion by the ALJ found that plaintiff could lift less than 10 pounds, **sit for six hours and stand for no more than two hours**, and could not climb, crawl, use vibrating tools, or the non-dominant right hand for fine and gross manipulation, reliance on that hypothetical was reversed by the Appeals Council and the matter remanded to a different ALJ.  (Tr. 277)  The Appeals Council in remanding the decision, noted that the ALJ found in his decision regarding plaintiff's residual functional capacity (RFC) that plaintiff could stand no more than two hours, and consequently, the hypothetical described an individual with greater capabilities than found by the ALJ.

On remand, ALJ Don Harper propounded a hypothetical question to the VE that assumed lifting up to 10 pounds, **sitting six hours, and standing no more than two hours** (consistent with the RFC as determined in 2004), with the other restrictions.  The VE stated that there were no jobs such a hypothetical individual could perform.  Plaintiff argues that, therefore, she is entitled to benefits.

However, ALJ Harper adjusted the RFC found previously and determined that she could stand six hours and sit two hours.  Thus, he applied the response from the hypothetical at the

earlier hearing which held that if plaintiff could stand six hours of an eight hour day, she could perform a restricted range of sedentary work. Plaintiff does not argue that this RFC is wrong.

ALJ Harper carefully reviewed the medical evidence and held that during the closed period, plaintiff could sit for two of eight hours, stand for six of eight hours, lift no more than 10 pounds, no climbing, no crawling, no vibrating tools, limited use of non-dominant hand as she could not perform fine manipulation or gross manipulation and could perform no repetitive lifting. The ALJ found that she could not perform her past work, and had no transferable skills from other past work. However, relying on the hypothetical from the 2004 hearing, he found that she could perform unskilled sedentary jobs such as security system monitor/security reception (2000 locally) and inspection/checking (1000 locally).

Since he determined that the RFC was consistent with that assumed by the VE in the 2004 hearing, it was not error for him to use that along with the guidelines in determining that there were jobs which plaintiff could have performed. The VE's testimony constitutes substantial evidence supporting the ALJ's determination that plaintiff was not disabled.

Accordingly, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v.

Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

  s/Virginia M. Morgan
VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE

Dated: July 17, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record and the Social Security Administration via the Court's ECF System and/or U. S. Mail on July 17, 2006.

s/Jennifer Hernandez
Case Manager to
Magistrate Judge Virginia M. Morgan